**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Magali Cintron, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KSF Acquisition Corporation,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Magali Cintron ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant KSF Acquisition Corporation ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge.

**NATURE OF THE ACTION**

1.      Defendant formulates, manufactures, advertises and sells the popular "SlimFast Original Shake Mixes," "SlimFast Advanced Nutrition Smoothie Mixes," and "SlimFast Advanced Immunity Orange Cream Swirl Smoothie" (the "Products") throughout the United States, including in New York.  Defendant markets its Products in a systematically misleading manner, by misrepresenting that its Products have specific amounts of protein that they do not in fact contain.

2.      Because Defendant's sales are driven by consumers seeking protein supplementation, Defendant prominently displays the total protein content of its Products on the

front of each Products' label. Plaintiff and those similarly situated ("Class Members") accordingly suffered an injury in fact as a result of Defendant's misleading and deceptive practices set forth herein.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction under the Class Action Fairness Act, ("CAFA") 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 Class Members; (2) there is diversity because Plaintiff is a citizen of New York and Defendant KSF Acquisition Corporation Inc. is a citizen of Florida; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

4.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York. Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in New York, including Plaintiff's purchase of the Products.

5.     Venue is proper because Plaintiff resides in New York, New York and many Class Members reside in the Southern District of New York, and throughout the state of New York. Defendant does substantial business in this district and a substantial part of the events or omissions giving rise to the Classes' claims, including Plaintiff's purchase of the Products, occurred in this district in Westchester, New York.

## PARTIES

6.     Plaintiff Magali Cintron is a citizen of New York who resides in Westchester County, New York. Plaintiff Cintron purchased the Products for her personal use during the applicable statute of limitations in retail stores throughout Westchester County and from an online retailer. Plaintiff Cintron's most recent purchases were Defendant's SlimFast Advanced

Nutrition Smoothie Mix which she purchased online for approximately $12.99 on or about December of 2020 and the SlimFast Original Shake Mix which she purchased for approximately $11.99 on or about November of 2021 from a CVS pharmacy in Mount Vernon, NY. Prior to purchasing the Products, Plaintiff Cintron saw and read their packaging which stated that they provide "10g[rams] PROTEIN" and "20g[rams] PROTEIN," respectively. Plaintiff Cintron relied on these representations by believing that the Products indeed contained the amount of protein represented therein. Had Plaintiff Cintron known that the Products representations were false, she would not have purchased the Products or would have paid less for them. Additionally, in making her purchases Plaintiff Cintron paid a price premium because the price of Defendant's Products was inflated as a result of the false and misleading claims regarding their nutritional value.

7.      Defendant KSF Acquisition Corporation is a Delaware corporation with its principal place of business in Palm Beach Gardens, Florida. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling for the Products.

## GENERAL ALLEGATIONS

8.      It is axiomatic that the amount of reported protein contained within Defendant's Products is material to any consumer seeking to purchase a meal replacement. Accordingly, Defendant fortifies its Products with Whey Protein Isolate, Soy Protein Isolate, and Milk Protein Concentrate. These protein sources differ from raw milk because they are processed to include a higher concentration of protein and remove much of the fats and carbohydrates traditionally found in milk and other naturally occurring beverages. Thus, the type of concentrated protein

3

within the Products is particularly prized.

9.      Defendant labels and advertises all of its Products in a manner that highlights the amount of added protein contained within. Each Product lists its purported protein content on its front label, directly below the title of the Product. Such representations constitute an express warranty regarding the Products' protein content. The Products' front labels plainly state that they are fortified with 10 grams or 20 grams of protein as depicted below:







10.     Despite Defendant's representations, however, the Products only contain 2 grams of protein (instead of 10 grams) or 12 grams of protein (instead of 20). Unbeknownst to Plaintiff and the Class Members, the other 8 grams of missing protein are accounted for by the dual nutrition facts tables located on the back label of the Products which expects consumers to add "8 fl oz Fat Free Milk," (sold separately) in order to benefit from the Products' full nutritional protein value. The back labels of the Products are depicted below:



# Nutrition Facts

22 servings per container

Serving size **1 scoop (26g)**

| Amount per serving | Shake Mix | | w/ 8 fl oz Fat Free Milk | |
|---|---|---|---|---|
| **Calories** | **110** | | **190** | |
| | | % DV** | | % DV** |
| **Total Fat** | 4g | 5% | 4g | 5% |
| Saturated Fat | 0.5g | 3% | 1g | 5% |
| Trans Fat | 0g | | 0g | |
| **Cholesterol** | 0mg | 0% | 5mg | 2% |
| **Sodium** | 125mg | 5% | 230mg | 10% |
| **Total Carbohydrate** | 18g | 7% | 30g | 11% |
| Dietary Fiber | 4g | 14% | 4g | 14% |
| Total Sugars | 10g | | 22g | |
| Incl. Added Sugars | 9g | 18% | 9g | 18% |
| **Protein** | 2g | 3% | 10g | 20% |

**The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

| | | | | |
|---|---|---|---|---|
| Vit. D | 2.5mcg | 15% | 5.4mcg | 25% |
| Calcium | 190mg | 15% | 490mg | 40% |
| Iron | 6.3mg | 35% | 6.4mg | 35% |
| Potas. | 260mg | 6% | 640mg | 15% |
| Vit. A | 150mcg | 15% | 300mcg | 35% |
| Vit. C | 27mg | 30% | 27mg | 30% |

| Amount per serving | Shake Mix | | w/ 8 fl oz Fat Free Milk | |
|---|---|---|---|---|
| | | % DV** | | % DV** |
| Vit. E | 13.5mg | 90% | 13.5mg | 90% |
| Vit. K | 20mcg | 15% | 20mcg | 15% |
| Thiamin | 0.3mg | 25% | 0.41mg | 35% |
| Riboflavin | 0.18mg | 15% | 0.63mg | 50% |
| Niacin | 5mg | 30% | 6.9mg | 45% |
| Vit. B6 | 0.5mg | 30% | 0.59mg | 35% |
| Folate | 100mcg DFE (60mcg folic acid) | 25% | 110mcg DFE (60mcg folic acid) | 30% |
| Vit. B12 | 1mcg | 40% | 2.23mcg | 90% |
| Biotin | 10mcg | 30% | 14.9mcg | 50% |
| Pantothenic Acid | 1mg | 20% | 1.9mg | 40% |
| Phosphorus | 80mg | 6% | 330mg | 25% |
| Iodine | 15mcg | 10% | 71mcg | 45% |
| Magnesium | 90mg | 20% | 120mg | 30% |
| Zinc | 3.3mg | 30% | 4.3mg | 40% |
| Selenium | 16mcg | 30% | 24mcg | 45% |
| Copper | 0.18mg | 20% | 0.21mg | 25% |
| Manganese | 0.7mg | 30% | 0.71mg | 30% |
| Chromium | 10mcg | 30% | 10.17mcg | 30% |
| Molybdenum | 15mcg | 35% | 19.9mcg | 45% |

**MAKES 22 SHAKES**

TASTE the LOVE

GLUTEN FREE

INGREDIENTS: SUGAR, SUNFLOWER CREAMER (SUNFLOWER OIL, BUTTERMILK, DISODIUM PHOSPHATE, NATURAL FLAVOR, SILICON DIOXIDE), ALKALIZED COCOA POWDER, MILK PROTEIN CONCENTRATE, CELLULOSE GEL, MILK PROTEIN CONCENTRATE, XANTHAN GUM, ARTIFICIAL FLAVOR, LECITHIN, SALT, ACESULFAME POTASSIUM, ASPARTAME. VITAMINS AND MINERAL BLEND: CALCIUM CARBONATE, MAGNESIUM OXIDE, DICALCIUM PHOSPHATE, DIPOTASSIUM PHOSPHATE, SODIUM ASCORBATE (VITAMIN C), DL-ALPHA TOCOPHEROL ACETATE (VITAMIN E), FERRIC ORTHOPHOSPHATE (IRON), NIACINAMIDE (VITAMIN B3), ZINC OXIDE, D-CALCIUM PANTOTHENATE, MANGANESE SULFATE, HYDROGLUCOSE (VITAMIN B2), THIAMIN MONONITRATE (VITAMIN B1), VITAMIN A PALMITATE, CHROMIUM CHLORIDE, RIBOFLAVIN (VITAMIN B2), BIOTIN, COPPER GLUCONATE, FOLIC ACID, SODIUM MOLYBDATE, SODIUM SELENITE, PHYTONADIONE (VITAMIN K1), POTASSIUM IODIDE, CHOLECALCIFEROL (VITAMIN D3), CYANOCOBALAMIN (VITAMIN B12). CONTAINS MILK AND SOY.

## Distributed By: SlimFast®
11780 U.S. Highway One, Suite 400N, Palm Beach Gardens, FL 33408
1-800-SLIMFAST | www.SlimFast.com

SWEETENED WITH NUTRITIVE AND NON-NUTRITIVE SWEETENERS. PHENYLKETONURICS: CONTAINS PHENYLALANINE.
Manufactured in the USA with ingredients of international and domestic origin.





**SUPPORTS IMMUNITY** **SUPPORTS IMMUNITY**

NEW!

## Nutrition Facts

12 servings per container

Serving size 32g (About 1 scoop)

| Amount per serving | Shake Mix | | w/ 8 fl oz Fat Free Milk | |
|---|---|---|---|---|
| **Calories** | **110** | | **190** | |
| | | % DV** | | % DV** |
| Total Fat | 3.5g | 4% | 4g | 5% |
| Saturated Fat | 0.5g | 3% | 0.5g | 3% |
| Trans Fat | 0g | | 0g | |
| Cholesterol | 25mg | 8% | 30mg | 10% |
| Sodium | 210mg | 9% | 320mg | 14% |
| Total Carbohydrate | 10g | 4% | 23g | 8% |
| Dietary Fiber | 5g | 18% | 5g | 18% |
| Total Sugars | 1g | | 14g | |
| Incl. Added Sugars | 0g | 0% | 0g | 0% |
| Protein | 12g | 24% | 20g | 40% |

*The % Daily Value (DV) tells you how much a nutrient in a serving of food contributes to a daily diet. 2,000 calories a day is used for general nutrition advice.

| | | | | |
|---|---|---|---|---|
| Vit. D | 20mcg | 100% | 22.9mcg | 110% |
| Calcium | 300mg | 25% | 590mg | 45% |
| Iron | 7.1mg | 40% | 7.2mg | 40% |
| Potas. | 300mg | 6% | 680mg | 15% |
| Vit. A | 470mcg | 50% | 620mcg | 70% |

| Amount per serving | Shake Mix | | w/ 8 fl oz Fat Free Milk | |
|---|---|---|---|---|
| | | % DV** | | % DV** |
| Vit. C | 500mg | 560% | 502mg | 560% |
| Vit. E | 14.3mg | 100% | 14.3mg | 100% |
| Vit. K | 20mcg | 15% | 20mcg | 15% |
| Thiamin | 0.3mg | 25% | 0.4mg | 35% |
| Riboflavin | 0.2mg | 15% | 0.6mg | 45% |
| Niacin | 5mg | 30% | 5.2mg | 35% |
| Vit. B6 | 1.7mg | 100% | 1.8mg | 110% |
| Folate | 120mcg DFE (71mcg folic acid) | 30% | 130mcg DFE (71mcg folic acid) | 35% |
| Vit. B12 | 12mcg | 500% | 13.2mcg | 550% |
| Biotin | 10mcg | 35% | 10mcg | 35% |
| Pantothenic Acid | 1mg | 20% | 1mg | 20% |
| Phosphorus | 170mg | 15% | 420mg | 35% |
| Iodine | 31mcg | 20% | 31mcg | 20% |
| Magnesium | 110mg | 25% | 140mg | 35% |
| Zinc | 5.5mg | 50% | 6.6mg | 60% |
| Selenium | 16mcg | 30% | 16mcg | 30% |
| Copper | 0.2mg | 20% | 0.2mg | 20% |
| Manganese | 0.7mg | 30% | 0.7mg | 30% |
| Chromium | 10mcg | 30% | 10mcg | 30% |
| Molybdenum | 15mcg | 35% | 15mcg | 35% |

INGREDIENTS: WHEY PROTEIN CONCENTRATE, SOY PROTEIN ISOLATE, OAT FIBER, SUNFLOWER OIL POWDER, GUM ARABIC, MALTODEXTRIN, CELLULOSE GEL, NATURAL FLAVOR, CITRIC ACID, DIETARY FIBER (CHICORY ROOT), CARRAGEENAN, DEXTROSE, GUAR, PEA FIBER, SOY FIBER, BETA-CAROTENE (FOR COLOR), SUCRALOSE, SOY LECITHIN, BIFIDOBACTERIUM SUBTILIS B, DICALCIUM PHOSPHATE. VITAMIN AND MINERAL BLEND: MAGNESIUM OXIDE, CALCIUM CARBONATE, DIPOTASSIUM PHOSPHATE, MAGNESIUM OXIDE, DICALCIUM PHOSPHATE, DL-ALPHA-TOCOPHERYL ACETATE, FERRIC ORTHOPHOSPHATE, CHOLECALCIFEROL, SODIUM MOLYBDATE, ZINC OXIDE, NIACINAMIDE, PYRIDOXINE HCL, MANGANESE SULFATE, RETINYL PALMITATE, SODIUM SELENITE, CUPRIC SULFATE, D-BIOTIN, THIAMIN MONONITRATE, RIBOFLAVIN, POTASSIUM IODIDE, SODIUM D-CALCIUM PANTOTHENATE, CHROMIUM CHLORIDE, FOLIC ACID, THIAMIN MONONITRATE, RIBOFLAVIN, POTASSIUM IODIDE. CONTAINS MILK AND SOY. MANUFACTURED IN A FACILITY THAT PROCESSES MILK, SOY, EGGS, FISH, SHELLFISH, TREE NUTS, PEANUTS, AND WHEAT.

Distributed By: SlimFast
11701 U.S. Highway One, Suite 400N, Palm Beach Gardens, FL 33408 | 1-800-SLIMFAST | www.SlimFast.com
CONTAINS A BIOENGINEERED FOOD INGREDIENT.
SWEETENED WITH NON-NUTRITIVE SWEETENERS. MANUFACTURED IN THE USA WITH INGREDIENTS OF INTERNATIONAL AND DOMESTIC ORIGIN.

11.     Pursuant to 21 U.S.C. § 321(f), Defendant's Products constitute a "food" regulated by the Federal Food, Drug, and Cosmetic Ac ("FDCA"), 21 U.S.C. § 301, *et seq.*, and its implementing regulations promulgated by the U.S. Food and Drug Administration ("FDA"). As pertinent here, the FDA prohibits manufacturers from making a claim on the front of a product's package about the "amount or percentage of a nutrient," such as protein, if the statement is "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). If it is, then "it may not be made on the label." 21 C.F.R. § 101.13(b). This is true even if the same amount appears in the nutrition facts panel. 21 C.F.R. § 101.13(c). The FDA explained in promulgating section 101.13(i) that the regulation was necessary "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption," which means that "a statement declaring that the product contained a specified amount of a nutrient could be misleading. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." 56 Fed. Reg. 60421. This is particularly true for voluntary nutrient declarations made on the front panel of products, which as the FDA indicated, "is viewed by the agency as an effort to market the food as a significant source of nutrients." 56 Fed. Reg. 60366.

12.     While the FDA permits manufacturers to include a separate "as prepared" column in the Nutrition Facts panel for food "commonly combined with other ingredients," the "type and quantity of the other ingredients to be added to the product" and "the specific method of cooking or other preparation" must be "**specified prominently on the label.**" 21 C.F.R. § 101.9(h)(4). Although this regulation applies only to a manufacturer's insertion of a dual nutrition facts panel—rather than voluntary nutrient declarations—Defendant's failure to even satisfy this

requirement illustrates the highly misleading nature of its protein representations.

13.     Specifically, although the Products contain certain symbols next to the protein representations, those symbols are barely legible, insufficiently offset by the much larger and prominent text that surrounds them, and are lost within the various other symbols contained elsewhere on the Products' front and side labels. Furthermore, even if the Products symbols were sufficiently conspicuous to catch the unsuspecting buyers' attention (they are not) consumers are not required to search the entire Products' packaging to find where they lead to—buried at the bottom of the Products' cluttered side labels—instead of the back label of the Products where a consumer could possibly expect to find additional information about the Products' nutritional contents. Finally, the disclosures connected to the symbols fail to cure the Products' protein misrepresentations because, aside from being insufficiently conspicuous, they fail to specify the "quantity of the other ingredients to be added to the product." 21 C.F.R. § 101.9(h)(4). Instead, these disclaimers merely state "as prepared with fat free milk" without informing consumers of the *quantity* of milk and the number of scoops necessary to arrive at the advertised protein misrepresentations. The side labels of the Products are depicted below:



**CLINICALLY PROVEN TO LOSE WEIGHT FAST!**

**CLINICALLY PROVEN** ☑

The **SlimFast** PLAN

**1** ONE SENSIBLE MEAL
enjoy your favorite foods

**2** REPLACE TWO MEALS A DAY
with shakes, smoothies or bars

**3** INDULGE IN THREE SNACKS
satisfy hunger between meals

For over 40 years, millions of Americans have lost weight and kept it off using SlimFast® Original Meal Shakes, as part of the clinically proven SlimFast Plan. 50 Clinical studies prove the SlimFast Plan helps you effectively lose weight, and you can see results in just one week!*

To learn more about SlimFast, find delicious recipes, and receive a free Quick Start Guide that includes a 7-day meal planner, text§ STARTPLAN to 44123.

Filled by weight not volume. Contents may settle during shipping and handling.

Approximate fill line after settling.

**GET STARTED**
text§ **STARTPLAN** to
**44123**

Recipes for Smoothies and Baked Treats
Visit SlimFast.com to find new recipes, using SlimFast Original Shake Mixes, for thick and delicious smoothies and treat-worthy, low calorie snacks.

**Directions for Delicious Shakes:**
Combine 26g, about one scoop (inside container), of our shake mix with 8 fl. oz. of fat free milk in a shaker cup or blender. Mix and enjoy!

SHAKE IT UP
OR BLEND IT

L-02636-2

\* WHEN USED AS PART OF THE SLIMFAST PLAN. INDIVIDUAL RESULTS MAY VARY.
† PER SHAKE AS PREPARED WITH FAT FREE MILK.
‡ CONTAINS 4g TOTAL FAT PER SERVING.
§MESSAGE AND DATA RATES MAY APPLY. FOR THE SLIMFAST PRIVACY POLICY GO TO SLIMFAST.COM/PRIVACY-POLICY. FOR TERMS AND CONDITIONS GO TO SLIMFAST.COM/LEGAL.
© SLIMFAST® 2020
DO NOT EXPOSE TO HEAT. STORE IN A COOL DRY PLACE.

If you want to lose weight and are under 18, pregnant, nursing, following a diet recommended by a doctor, have health problems such as diabetes, or want to lose more than 30 lbs., see a doctor before starting this or any diet. Do not lose more than 2 pounds per week after the first week. Rapid weight loss may cause health problems. Do not use as a sole source of nutrition. Eat at least 1,200 calories a day. Exercise at least 30 minutes a day and drink plenty of water.

NEW

CLINICALLY PROVEN
LOSE WEIGHT
& KEEP IT OFF

22 SERVINGS
NET WT 1.28 lb



**HIGH PROTEIN‡**

**CLINICALLY PROVEN** ☑

**CLINICALLY PROVEN TO LOSE WEIGHT FAST!**

SlimFast® Advanced Smoothie Mixes give you the nutrition you need and the delicious taste you want. As part of the SlimFast Plan, it's never been easier to lose weight fast and keep it off! Why?

**It's Flexible!** Our Smoothies are designed to mix well with other ingredients. Want to add some banana, greek yogurt, or a dash of cinnamon?^ Do It! For recipes, visit slimfast.com.

**It Works!** 50 clinical studies prove the SlimFast Plan helps you effectively lose weight. You can see results in just 1 week!*

**It's Nutritious!** SlimFast Advanced has more protein‡ with less sugar.†

*The* **SlimFast PLAN**®

**1** ONE SENSIBLE MEAL
enjoy your favorite foods

**2** REPLACE TWO MEALS A DAY
with shakes, smoothies or bars

**3** INDULGE IN THREE SNACKS
satisfy hunger between meals

**Directions:** For best results, combine 26g, about one scoop (inside container), of our delicious smoothie mix with 8 fl oz fat free milk in a blender or shaker cup. Mix well. Enjoy!

**Want a Thicker Smoothie?:** Add 1/2 cup of ice and mix using a blender until smooth.

- - - - - - - - - - - - - - - -
Filled by weight not volume. Contents may settle during shipping and handling.

Approximate fill line after settling.

6061740

*WHEN USED AS PART OF THE SLIMFAST PLAN. INDIVIDUAL RESULTS MAY VARY.
‡DOUBLE THE PROTEIN COMPARED TO ORIGINAL SLIMFAST MEAL REPLACEMENT SHAKE MIX (AS PREPARED), 10g vs. 20g.
† 27.8% REDUCTION IN SUGAR COMPARED TO ORIGINAL SLIMFAST MEAL REPLACEMENT SHAKE MIX (AS PREPARED), 18g vs. 13g.
^ADDITIONS TO SMOOTHIES WILL ALTER CALORIE CONTENT AND NUTRITIONAL VALUES.
⊥ PER SMOOTHIE AS PREPARED WITH FAT FREE MILK.
§MESSAGE AND DATA RATES MAY APPLY. FOR THE SLIMFAST PRIVACY POLICY GO TO SLIMFAST.COM/PRIVACY-POLICY. FOR TERMS AND CONDITIONS GO TO SLIMFAST.COM/LEGAL. © SLIMFAST® 2021

**DO NOT EXPOSE TO HEAT. STORE IN A COOL DRY PLACE.**

If you want to lose weight and are under 18, pregnant, nursing, following a diet recommended by a doctor, have health problems such as diabetes, or want to lose more than 30 lbs., see a doctor before starting this or any diet. Do not lose more than 2 pounds per week after the first week. Rapid weight loss may cause health problems. Do not use as a sole source of nutrition. Consume at least 1,200 calories a day. Exercise at least 30 minutes a day and drink plenty of water.

S-179001-9

0 8346 79001 2



SUPPORTS IMMUNITY

**CLINICALLY PROVEN TO LOSE WEIGHT FAST!**

SlimFast® Advanced Immunity Smoothie Mix gives you an extra boost to support your immune system along with all the nutrition you need and the delicious taste you want. This exciting addition to the SlimFast Family helps support your wellness goals while following the SlimFast Plan to lose weight fast and keep it off!

**Why?** To support your immune system, SlimFast Advanced Immunity Smoothie Mix is fortified with a Probiotic Blend that delivers 2 Billion CFUs. Together with 24 vitamins and minerals, including immune champions A, C, D, E and Zinc, plus botanical powerhouses turmeric and elderberry, this smoothie mix is a delicious way to lose weight fast to achieve your wellness goals!

**It Works!** 50 clinical studies prove the SlimFast Plan helps you effectively lose weight. You can see results in just 1 week!*

**Directions:** For best results, combine 32g, about one scoop (inside container), of our delicious smoothie mix with 8 fl oz fat free milk in a blender or shaker cup. Mix well. Enjoy!

**Want a Thicker Smoothie?** Add 1/2 cup of ice and mix using a blender until smooth.

CLINICALLY PROVEN ☑

The **SlimFast** PLAN®

**1** ONE SENSIBLE MEAL enjoy your favorite foods

**2** REPLACE TWO MEALS A DAY with shakes, smoothies or bars

**3** INDULGE IN THREE SNACKS satisfy hunger between meals

*WHEN USED AS PART OF THE SLIMFAST PLAN. INDIVIDUAL RESULTS MAY VARY.

†PER SMOOTHIE AS PREPARED WITH FAT FREE MILK.

§MESSAGE AND DATA RATES MAY APPLY. FOR THE SLIMFAST PRIVACY POLICY GO TO SLIMFAST.COM/PRIVACY-POLICY. FOR TERMS AND CONDITIONS GO TO SLIMFAST.COM/LEGAL.
© SLIMFAST® 2021

DO NOT EXPOSE TO HEAT. STORE IN A COOL DRY PLACE.

If you want to lose weight and are under 18, pregnant, nursing, following a diet recommended by a doctor, have health problems such as diabetes, or want to lose more than 30 lbs., see a doctor before starting the ory diet. Do not use more than 2 pounds per week after the first week. Rapid weight loss may cause health problems. Do not use as a sole source of nutrition. Consume at least 1,200 calories a day. Exercise at least 30 minutes a day and drink plenty of water.

310K/53801

0 88346 79007 4

CONTENTS SOLD BY WEIGHT, NOT VOLUME. SETTLING WILL OCCUR.

AT TIME OF FILL

SETTLING UNTIL

12 SER GLUTEN NET WT

SlimFast

14.    Defendant's false, deceptive, and misleading label statements violate 21 U.S.C. § 343(a)(1) and the so-called "little FDCA" statutes adopted by many states[1], which deem food misbranded when "its labeling is false or misleading in any particular."

15.    Defendant's false, deceptive and misleading label statements are unlawful under state Unfair and Deceptive Acts and Practices Statutes and/or Consumer Protection Acts, which prohibit unfair, deceptive or unconscionable acts in the conduct of trade or commerce.

16.    New York has expressly adopted the federal food labeling requirements as its own. Thus, a violation of federal food labeling laws is an independent violation of New York law and actionable as such.

17.    The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Complaint.

18.    Defendant intended for Plaintiff and the Class Members to be misled.

19.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the Class Members who suffered an injury in fact and lost money or property as a result of Defendant's wrongful conduct.

---

[1] *See, e.g.*, New York Consolidated Laws, Agriculture and Markets Law - AGM § 201

## <u>CLASS ACTION ALLEGATIONS</u>

20.     Plaintiff brings this action on behalf of herself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

> **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

> **New York Subclass:** All persons residing in New York who, during the maximum period of time permitted by the law, purchased the Products primarily for personal, family or household purposes, and not for resale.

21.     The Classes do not include (1) Defendant, its officers, and/or its directors; or (2) the Judge to whom this case is assigned and the Judge's staff.

22.     Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

23.     ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

24.     ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. The precise number of the members of the Classes and their identities are unknown to Plaintiff at this time but may be determined through discovery. Members of the Classes may be notified of the pendency of this action by mail and/or

publication through the distribution records of Defendant and third-party retailers and vendors.

25.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)    The true nature and quality of the protein in the Products;

(b)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(c)    Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(d)    Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(e)    Whether Plaintiff and the members of the Classes are entitled to statutory damages;

(f)    Whether Plaintiff and the members of the Classes are entitled to restitution; and

(g)    Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs?

26.    ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

27.    ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an

adequate representative of the Classes because she has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

28.     Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions effecting only individual members and that a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c) Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Nationwide Class)[2]

29.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

30.     Defendant provided the Plaintiff and the Nationwide Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products contain either 10g or 20g or Protein, respectively.

31.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

32.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and the Nationwide Class Members' transactions.

33.     Plaintiff and the Nationwide Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

---

[2] While discovery may alter the following, Plaintiff asserts that the states with similar express warranty laws under the facts of this case include, but are not limited to, the following:  Code of Ala. § 7-2-313; Alaska Stat. § 45.02.313; A.R.S. § 47-2313; A.C.A. § 4-2-313; Cal. Comm. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Fla. Stat. § 672.313; O.C.G.A. § 11-2-313; H.R.S. § 490:2-313; Idaho Code § 28-2-313;  810 I.L.C.S. 5/2-313; Ind. Code § 26-1-2-313; Iowa Code § 554.2313; K.S.A. § 84-2-313; K.R.S. § 355.2-313; 11 M.R.S. § 2-313; Md. Commercial Law Code Ann. § 2-313; 106 Mass. Gen. Laws Ann. § 2-313; M.C.L.S. § 440.2313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2-313; Neb. Rev. Stat. § 2-313; Nev. Rev. Stat. Ann. § 104.2313; R.S.A. 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; II. O.R.C. Ann. § 1302.26; 12A Okl. St. § 2-313;  Or. Rev. Stat. § 72-3130; 13 Pa. Rev. Stat. § 72-3130; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 6A.2-313; W. Va. Code § 46-2-313; Wis. Stat. § 402.313; Wyo. Stat. § 34.1-2-313.

34.     Within a reasonable time after she knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and the Nationwide Class Members, placed Defendant on notice of its breach by mailing Defendant a pre-suit letter on May 11, 2022, giving Defendant an opportunity to cure its breach, which it refused to do.

35.     Defendant breached the Products' express warranties because the Products do not contain 10g or 20g of protein as advertised.

36.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and the Nationwide Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**COUNT II**
**Violation of State Consumer Protection Statues[3]**
**(On Behalf of Plaintiff and the Nationwide Class)**

37.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

38.     The Consumer Protection Statutes of the Nationwide Class Members prohibit the

---

[3] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann.,

use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

39.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of its Products that they are fortified with 10 grams or 20 grams of protein, depending on the Product. Despite those representations, however, the Products only contain 2 grams of protein (instead of 10) or 12 grams of protein (instead of 20), respectively.

40.     The foregoing deceptive acts and practices were directed at consumers.

41.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nutritional value of the Products.

42.     As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

43.     On behalf of herself and the Nationwide Class Members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT III
### Violation of New York G.B.L. § 349
### (On Behalf of Plaintiff and the New York Subclass)

44.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

45.     New York's General Business Law § 349 prohibits deceptive acts or practices in

---

Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

the conduct of any business, trade, or commerce.

46.     In its sale of Products throughout the state of New York, at all relevant times herein, Defendant conducted business and trade within the meaning and intendment of New York's General Business Law § 349.

47.     Plaintiff and the New York Subclass Members are consumers who purchased the Products from Defendant for their personal use.

48.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by conspicuously representing on the packaging of its Products that they are fortified with 10 grams or 20 grams of protein, depending on the Product. Despite those representations, however, the Products only contain 2 grams of protein (instead of 10) and 12 grams of protein (instead of 20), respectively.

49.      The foregoing deceptive acts and practices were directed at consumers.

50.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nutritional value of the Products.

51.     As a result of Defendant's deceptive practices, Plaintiff and the New York Subclass Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

52.     On behalf of herself and the New York Subclass Members, Plaintiff seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

**COUNT IV**
**Violation of New York G.B.L. §350**
**(On Behalf of Plaintiff and the New York Subclass)**

53.     Plaintiff incorporates by reference each of the allegations contained in the foregoing

paragraphs of this Complaint as though fully set forth herein.

54.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

55.     Defendant violated New York General Business Law § 350 by conspicuously representing on the packaging of its Products that they are fortified with 10 grams or 20 grams of protein, depending on the Product. Despite those representations, however, the Products only contain 2 grams of protein (instead of 10) and 12 grams of protein (instead of 20), respectively.

56.      The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

57.     Defendant's misrepresentations have resulted in consumer injury or harm to the public interest.

58.     As a result of Defendant's false advertising, Plaintiff and the New York Subclass Members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

59.     On behalf of herself and the New York Subclass Members, Plaintiff seeks to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)      For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d)      For prejudgment interest on all amounts awarded;

(e)      For an order of restitution and all other forms of equitable monetary relief; and

(f)      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: August 2, 2022

Respectfully submitted,

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

**GUCOVSCHI ROZENSHTEYN, PLLC**

Adrian Gucovschi, Esq.
630 Fifth Avenue, Suite 2000
New York, NY 10111
Tel: (212) 884-4230
adrian@gr-firm.com

*Counsel for Plaintiff and the Class*