## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MAGALI CINTRON, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 7:22-cv-06541 |
| Plaintiff, | ) ) ) | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | ) ) | |
| KSF ACQUISITION CORPORATION, | ) ) | |
| Defendant. | ) ) | |

AMIN TALATI WASSERMAN, LLP
William P. Cole (*pro hac vice*)
Matthew R. Orr (*pro hac vice*)
515 South Flower Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 933-2330
Facsimile: (312) 884-7352

Attorneys for Defendant KSF Acquisition
Corporation

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ..................................................................................................1

II.  PLAINTIFF'S ALLEGATIONS .........................................................................2

   A.   The Advanced Nutrition Product ....................................................................2

   B.   The Advanced Immunity Product ...................................................................3

   C.   The Original Product .......................................................................................3

   D.   Plaintiff's Alleged Purchases ..........................................................................4

III.  PLEADING STANDARDS ..................................................................................5

IV.  ARGUMENT ........................................................................................................6

   A.   The Court Does Not Have Personal Jurisdiction Over Defendant with Respect to Claims of Out-of-State Putative Class Members. ...............................................................6

   B.   Plaintiff's GBL §§ 349 and 350 Claims Fail as a Matter of Law Because She Fails to Plead Facts Plausibly Establishing that a Significant Portion of Reasonable Consumers Would be Misled. ......................................................................................................9

   C.   Plaintiff's Breach of Express Warranty Claims Fails for the Same Reason as Her GBL Claims. .........................................................................................................13

   D.   Plaintiff States No Claim for Restitution. .....................................................13

V.   CONCLUSION....................................................................................................14

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..........................................................5

*Boswell v. Bimbo Bakeries USA, Inc.*, 570 F.Supp.3d 89 (S.D.N.Y. 2021)..........................10, 13

*Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017). .......................................7, 8, 9

*Broder v. MBNA Corp.*, 281 A.D.2d 369,  722 N.Y.S.2d 524 (1st Dep't 2011)....................10, 12

*Carpenter v. PetSmart, Inc.*, 441 F.Supp.3d 1028 (S.D. Cal. 2020)..........................................8, 9

*Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018)................................6

*Daimler AG v. Bauman*, 571 U.S. 117 (2014)................................................................7

*Daniel v. Tootsie Roll Industries, LLC*, No. 17 Civ. 7541, 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018)..........................................................................................................12

*Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F.Supp.3d 235 (S.D.N.Y. 2021)..........10, 13

*Dental Supplies Antitrust Litig.*, No. 16-cv-696BMCGRB, 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ...................................................................................................9

*Fink v. TimeWarner Cable*, 714 F.3d 739 (2d Cir. 2013) ........................................................10

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) .....................................................10, 11, 12

*Gazzillo v. Ply Gem Indus., Inc.*, 17-cv-1077, 2018 WL 5253050 (N.D.N.Y. Oct. 22, 2018) .......8

*Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022).6

*Hu v. City of New York*, 927 F.3d 81 (2d Cir. 2019) .........................................................6

*Lazaroff v. Paraco Gas Corp.*, 965 A.D.2d 1080, 945 N.Y.S.2d 326 (2012).............................13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013).....................7

*Maclin v. Reliable Reports of Tex., Inc.*, 314 F.Supp.3d 845 (N.D. Ohio 2018)..........................8

*Mantikas v. Kellogg Company*, 910 F.3d 633 (2d Cir. 2018)..............................................10, 12

*Molock v. Whole Foods Market, Inc.*, 952 F.3d 293 (D.C. Cir. 2020) ........................................8

*Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020).................................................................8

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) ..............................................................10

*Pichardo v. Only What You Need, Inc.*, No. 20-CV493 (VEC), 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020)................................................................................................................12

*Randolph v. Mondelez Global LLC*, No. 21-cv-10858 (JSR), 2022 WL 953301 (S.D.N.Y. Mar. 29, 2022) ................................................................................................................6

*Smith v. Apple, Inc.*, 583 F.Supp.3d ---, No. 21cv3657 (DLC), 2022 WL 313874 (S.D.N.Y. Feb. 2, 2022) ...........................................................................................................6, 7, 8

*Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47 (S.D.N.Y. 2020)..............................12

*Twohig v. Shop-Rite Supermarkets, Inc.,* 519 F.Supp.3d 154 (S.D.N.Y. 2021).........................10

*U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143 (2d Cir. 2019)..............................7, 9

*Walden v. Fiore*, 571 U.S. 277 (2014) ........................................................................................9

**Statutes**

Fed. R. Civ. P. 8.........................................................................................................................5

Fed. R. Civ. P. 12....................................................................................................................5, 6

New York Gen. Bus. Law § 349.............................................................................................9, 13

New York Gen. Bus. Law § 350.............................................................................................9, 13

## I.     INTRODUCTION

This case concerns Defendant KSF Acquisition Corporation's ("Defendant") Advanced Nutrition, Advanced Immunity and Original meal replacement smoothie or shake mixes. Plaintiff Magali Cintron claims the product containers mislead consumers to believe that one scoop of mix alone provides either 20 grams of protein or 10 grams of protein (depending on the product), when in fact one *serving* of the meal replacement smoothie prepared as instructed provides the 20 or 10 grams protein.

Plaintiff's assertion that the product label "misleads" reasonable consumers is a legal conclusion not deemed true on a motion to dismiss. She fails to plead facts plausibly establishing that a significant portion of reasonable consumers would be misled. The Advanced Nutrition and Advanced Immunity product containers *expressly* and *repeatedly* state that one serving, when *prepared as instructed* with eight ounces of fat free milk, provides 20 grams of protein. Similarly, the Original product container *expressly* and *repeatedly* states that one serving, when *prepared as instructed* with eight ounces of fat free milk, provides 10 grams of protein. The product containers all include a massive, dual-column Nutrition Facts panel expressly distinguishing between the amount of protein per dry scoop versus the amount of protein per prepared serving. She fails to state any claim.

Plaintiff's Complaint also suffers from additional defects. First, although Plaintiff attempts to allege claims on behalf of a nationwide class, the Court lacks personal jurisdiction over Defendant with respect to the claims of out-of-state consumers. Plaintiff does not allege that those claims have any connection to New York, much less to any of Defendant's activities in New York. Second, the Court should dismiss any claim for restitution because Plaintiff does not allege any individual claim for which restitution is an available remedy.

1

## II.     PLAINTIFF'S ALLEGATIONS

Defendant markets the SlimFast Original Meal Replacement Shake Mix (the "Original Product"), the SlimFast Advanced Nutrition Meal Replacement Smoothie Mix (the "Advanced Nutrition Product"), and the SlimFast Advanced Immunity Meal Replacement Smoothie Mix (the "Advanced Immunity Product") (collectively, the "Products"). (Doc. 1, ¶¶ 1, 9) As declared in capital lettering on the labels, each of the Products is a "MEAL REPLACEMENT" smoothie or shake mix. (*Id.* ¶ 9.)

### A.     The Advanced Nutrition Product

The front label of the Advanced Nutrition Product states "20g HIGH PROTEIN‡." (*Id.*) The "‡" symbol leads to the following statement on the cylindrical product container: "‡PER SMOOTHIE AS PREPARED WITH FAT FREE MILK." (*Id.*) The directions on the container instruct that, in lieu of one meal, the consumer is to "combine 26g, about one scoop (inside container), of our delicious smoothie mix with 8 fl oz fat free milk in a blender or shaker cup." (*Id.* at p. 15; Declaration of Amber Reyna ("Reyna Decl."), Ex. 3.)

Additionally, if one is looking at the "20g" statement on the front of the container, then located just a slight rotation of the cylinder to the right is a large, dual-column Nutrition Facts panel dominating a substantial portion of the overall labeling. (*Id.*) The Nutrition Facts panel expressly states how much protein is contained in the "Shake Mix" alone versus how much protein is contained when mixed with "8 fl oz Fat Free Milk." (*Id.*) Specifically, the Nutrition Facts panel states that one serving of the "Shake Mix" contains 12g protein, and that one serving when prepared as instructed with "8 fl oz Fat Free Milk" contains 20g protein. (*Id.*) The label also states: "DOUBLE THE PROTEIN COMPARED TO ORIGINAL SLIMFAST MEAL REPLACEMENT SHAKE MIX (AS PREPARED), 10g vs. 20g." (*Id.*)

**B.     The Advanced Immunity Product**

The front label of the Advanced Immunity Product states "20g PROTEIN<sup>†</sup>." (*Id.* ¶ 9; Reyna Decl., Ex. 1.) The "†" symbol leads to the following statement on the cylindrical product container: "†PER SMOOTHIE AS PREPARED WITH FAT FREE MILK." (*Id.* at p. 16.) The directions on the container instruct that, in lieu of one meal, the consumer is to "combine 32g, about one scoop (inside container), of our delicious smoothie mix with 8 fl oz fat free milk in a blender or shaker cup." (*Id.* at p. 16; Reyna Decl., Ex. 1.)

Again, if one is looking at the "20g" statement on the front of the container, then located just a slight rotation of the cylinder to the right is a large, dual-column Nutrition Facts panel dominating a substantial portion of the overall labeling. (Doc. 1 at p. 11.) The Nutrition Facts panel expressly states how much protein is contained in the "Shake Mix" alone versus how much protein is contained when mixed with "8 fl oz Fat Free Milk." (*Id.*) Specifically, the Nutrition Facts panel states that one serving of the "Shake Mix" contains 12g protein, and that one serving when prepared as instructed with "8 fl oz Fat Free Milk" contains 20g protein. (*Id.*)

**C.  The Original Product**

The front label of the Original Product states "10g PROTEIN<sup>†</sup>." (*Id.* ¶ 9; Reyna Decl., Ex. 2.) The "†" symbol leads to the following statement on the cylindrical product container: "†PER SHAKE AS PREPARED WITH FAT FREE MILK." (*Id.* at p. 14.) The directions on the container instruct that, in lieu of one meal, the consumer is to "Combine 26g, about one scoop (inside container), of our shake mix with 8 fl oz fat free milk in a shaker cup or blender." (*Id.* at p. 16; Reyna Decl., Ex. 2.)

Once again, if one is looking at the "10g" statement on the front of the container, then located just a slight rotation of the cylinder to the right is a large, dual-column Nutrition Facts

3

panel occupying a substantial portion of the overall labeling. (Doc. 1 at p. 9.) The Nutrition Facts panel expressly states how much protein is contained in the "Shake Mix" alone versus how much protein is contained when mixed as instructed with "8 fl oz Fat Free Milk." (*Id.*)

### D. Plaintiff's Alleged Purchases

Plaintiff Magali Cintron vaguely alleges that she purchased "the Products" during the "applicable statute of limitations" in retail stores throughout Westchester County and "from an online retailer." (Doc. 1, ¶ 6.) She does not allege how many times she supposedly purchased each of the three Products, but merely that her "most recent" purchases were the Advanced Nutrition Product "which she purchased online for approximately $12.99 on or about December of 2020" and the Original Product "which she purchased for approximately $11.99 on or about November of 2021 from a CVS pharmacy in Mount Vernon, NY." (*Id.*)

Plaintiff alleges that "[p]rior to purchasing the Products, [she] saw and read their packaging which stated that they provide '10g[rams] PROTEIN' and '20g[rams] PROTEIN[.]' " (*Id.*) She does not specify which portions of the containers she did or did not view before or between any of her alleged purchases. For example, she does not allege whether she prepared the product as instructed and, if she did, how she became aware of how the product should be prepared. But she claims it was "[u]nbeknownst" to her that part of the 10g or 20g protein per meal replacement serving is derived from the milk to be added as instructed. (*Id.* ¶ 10.)

Plaintiff does not allege the Nutrition Facts panel for any of the Products is inaccurate in any way. She does not dispute that a scoop of the mix provides the amount of protein expressly stated on each Product's Nutrition Facts panel, or that one serving of the smoothie or shake, when prepared as instructed, provides the amount of protein expressly stated on each Product's Nutrition Facts panel. Even though each Advanced Nutrition or Advanced Immunity meal

replacement smoothie or shake *does* provide 20g of protein in the replacement meal, and even though each Original meal replacement shake *does* provide 10g of protein in the replacement meal, Plaintiff alleges that had she known consumers must add milk to obtain those protein amounts, she would not have purchased the Products or "would have paid less" for them. (Doc. 1, ¶ 6.) Seeking to represent both a nationwide class and a New York subclass, she purports to assert the following claims: (1) breach of express warranty (nationwide class); (2) violation of state consumer protection statutes (nationwide class); (3) violation of New York General Business Law ("GBL") § 349 (New York subclass); and (4) violation of GBL § 350 (New York subclass).

## III.   PLEADING STANDARDS

On a Rule 12(b)(6) motion, the court must dismiss a claim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. Rule 8 of the Federal Rules of Civil Procedure demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). The complaint must state sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility only if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

The court does not accept as true "legal conclusions," "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678. A "naked assertion" devoid of "further factual enhancement" does not suffice. *Id.* (citation omitted). Additionally, evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

5

When ruling on a Rule 12(b)(6) motion, the Court may consider not only the complaint in its entirety, but also "documents incorporated into the complaint by reference." *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019). In food labeling cases, this routinely includes full images of the product labels the plaintiff challenges in the complaint. *See, e.g., Randolph v. Mondelez Global LLC*, No. 21-cv-10858 (JSR), 2022 WL 953301, at *1 n.1 (S.D.N.Y. Mar. 29, 2022); *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *2 (S.D.N.Y. Mar. 18, 2022).

Finally, on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction exists. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81 (2d Cir. 2018).

## IV.   ARGUMENT

### A.   The Court Does Not Have Personal Jurisdiction Over Defendant with Respect to Claims of Out-of-State Putative Class Members.

Plaintiff purports to assert the breach of express warranty and so-called "violation of state consumer protection statutes" claims on behalf of a nationwide class. Plaintiff cannot pursue any of those claims on behalf of a nationwide class because the Court does not have personal jurisdiction over Defendant with respect to out-of-state purchasers.

Plaintiff bears the burden to make a prima facie showing that personal jurisdiction exists over Defendant with respect to the claims of out-of-state class members. *Charles Schwab*, 883 F.3d at 81. To make such a showing, Plaintiff must allege sufficient facts to establish that there is a basis for jurisdiction under the law of the forum State, and that the exercise of personal jurisdiction comports with due process. *Id.* at 82; *Smith v. Apple, Inc.*, 583 F.Supp.3d ---, No. 21cv3657 (DLC), 2022 WL 313874, at *4 (S.D.N.Y. Feb. 2, 2022).

The Due Process Clause requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169 (2d Cir. 2013). The minimum contacts analysis has three steps: (1) the defendant must have purposely availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State; (2) the plaintiff's claims must arise out of or relate to the defendant's forum conduct; and (3) the court must determine that jurisdiction is reasonable under the circumstances. *U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019); *Smith*, 2022 WL 313874, at *4.

Plaintiff does not allege that Defendant is incorporated in New York or has its principal place of business in New York. To the contrary, she alleges that Defendant is a Delaware corporation with its principal place of business in Florida. (Doc. 1, ¶ 7.) There is no general jurisdiction over Defendant. *See Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) (general jurisdiction arises only where a corporate defendant is "at home" in the forum state). As for specific jurisdiction, Defendant does not dispute that the Court has specific jurisdiction over it with respect to Plaintiff's personal claims, but the Court lacks such jurisdiction with respect the claims of out-of-state putative class members. *See Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773, 1781, 1783 (2017).

In *Bristol-Myers Squibb*, a group of 678 plaintiffs filed a mass action for injuries caused by one of Bristol-Myers Squibb's drugs, Plavix. *Id.* at 1778. Only 86 of the plaintiffs were California residents. *Id.* The other 592 plaintiffs were residents of other States, and had not suffered their injuries in California. *Id.* The Supreme Court held that without an actual connection between the out-of-state plaintiffs' claims and the defendant's activities in California, the

California state court's exercise of personal jurisdiction over Bristol-Myers Squibb with respect to the non-California plaintiffs' claims would violate the Due Process Clause of the Fourteenth Amendment. *Id.* at 1781, 1783.

The Second Circuit has not yet addressed *Bristol-Myers'* application to class actions. But since *Bristol-Myers Squibb*, courts have generally taken one of three approaches with respect to claims of out-of-state putative class members. *Carpenter v. PetSmart, Inc.*, 441 F.Supp.3d 1028, 1034 (S.D. Cal. 2020) (describing the three approaches). First, some courts have held (incorrectly) that *Bristol-Myers Squibb* does not apply outside the context of mass tort cases. *See, e.g., Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020). Second, other courts have held (correctly) the opposite: the same due process concerns animating *Bristol-Myers Squibb* apply to nationwide class actions in federal court, and there is no principled way to distinguish between the requirements of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Due Process Clause. *See, e.g., Carpenter*, 441 F.Supp.3d at 1034; *Gazzillo v. Ply Gem Indus., Inc.*, 17-cv-1077, 2018 WL 5253050, at *7 (N.D.N.Y. Oct. 22, 2018); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F.Supp.3d 845, 850-51 (N.D. Ohio 2018); *compare Smith*, 2022 WL 313874, at *4 ("the SAC fails to plead a nexus between Tucker's claims on behalf of a South Carolina class and the defendant's forum state contacts"). A third set of courts has deferred this issue until the class certification stage, taking the view it would be premature for a court to decide whether there is specific jurisdiction over the defendant with respect to putative class member claims. *See, e.g., Molock v. Whole Foods Market, Inc.*, 952 F.3d 293, 295 (D.C. Cir. 2020).

There is, in fact, no principled distinction between the strictures of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Due Process Clause, and this Court should dismiss, for lack of personal jurisdiction, the claims of all putative class members who

purchased the challenged products outside New York. As explained in *Carpenter*, "the rationale for the holding in *Bristol-Myers Squibb* indicates that if and when the Supreme Court is presented with the question, it will also hold that a state cannot assert specific jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims." *Carpenter*, 441 F.Supp.3d at 1035; *cf. In re Dental Supplies Antitrust Litig.*, No. 16-cv-696BMCGRB, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017), at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case."). Personal jurisdiction must arise out of the contacts that the defendant itself creates with the forum state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *U.S. Bank*, 916 F.3d at 150 (2d Cir. 2019). The Complaint does not allege that the claims of any class members outside New York arise from any contact that Defendant created with New York.

There is no reason to delay this ruling, as nothing will change the lack of specific jurisdiction over claims of out-of-state consumers who purchased out-of-state. The Court should dismiss all such claims. Defendant should not be subjected to the burdens and expense of discovery and litigation concerning claims over which the Court does not and will not have jurisdiction.

**B. Plaintiff's GBL §§ 349 and 350 Claims Fail as a Matter of Law Because She Fails to Plead Facts Plausibly Establishing that a Significant Portion of Reasonable Consumers Would be Misled.**

To state a claim under GLB §§ 349 or 350, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice. *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Boswell v. Bimbo Bakeries USA, Inc.*, 570 F.Supp.3d 89, 94 (S.D.N.Y. 2021). The "reasonable consumer" standard governs the second element of a GBL § 349 or 350 claim. *Fink v. TimeWarner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013) (per curiam); *Boswell*, 570 F.Supp.3d at 94. To survive a motion to dismiss, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig v. Shop-Rite Supermarkets, Inc.,* 519 F.Supp.3d 154, 160 (S.D.N.Y. 2021) (alternation and internal quotation marks omitted); *accord Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F.Supp.3d 235, 241 (S.D.N.Y. 2021). Rather, a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled. *Dashnau*, 529 F.Supp.3d at 241.

In applying the reasonable consumer standard, "context is crucial." *Fink*, 714 F.3d at 742. The court must "consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Company*, 910 F.3d 633, 636 (2d Cir. 2018); *accord Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (when applying reasonable consumer standard, the court considers "the promotion as a whole"); *Boswell*, 570 F.Supp.3d at 94. Furthermore, "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed . . . ." *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (1st Dep't 2011). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741; *accord Dashnau*, 529 F.Supp.3d at 241.

Applying the foregoing standards, and considering the challenged advertisement as a whole, Plaintiff fails to plead facts plausibly establishing that a significant portion of the general

10

public, acting reasonably under the circumstances, would be misled. In *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016), the court held a reasonable consumer would not be misled about the amount of lip balm in a tube because it was undisputed that the label disclosed the correct weight of included lip balm product. 838 F.3d at 965-66. Similarly, in *Freeman*, the court rejected the plaintiff's argument that a sweepstakes promotional mailer would deceive reasonable consumers because "the reader will review the large print and ignore the qualifying language in small print." 68 F.3d at 289. The court observed that the promotions "expressly and repeatedly state the conditions which must be met in order to win" and "[n]one of the qualifying language is hidden or unreadably small." *Id.* at 289. Thus, the alleged deception claimed by the plaintiff was "unreasonable in the context of the entire document." *Id.* at 290.

The same applies here. The cylindrical Product containers are *replete* with information alerting reasonable consumers that 20g protein (or 10g protein) refers to the amount of protein in one meal replacement smoothie or shake prepared with milk, as instructed. The 20g protein or 10g protein statements on the front of the canisters each bear a ‡ symbol or a † symbol tying to the associated statement "‡[or †]PER SMOOTHIE AS PREPARED WITH FAT FREE MILK" or "†PER SHAKE AS PREPARED WITH FAT FREE MILK." (Doc. 1, pp. 6, 15; Reyna Decl., Exs. 1-3.) Furthermore, the Nutrition Facts panel is *massive* and just inches away *at most* from the "20g" or "10g" asterisked statement on the front of the cylinder. The Nutrition Facts panel clearly states the protein per dry scoop versus the protein per *smoothie*. That information is not "hidden or unreadably small." *Freeman*, 68 F.3d at 289.

Plaintiff, of course, does not allege that she or any other consumers purchased the product to "dry scoop" it. To the contrary, the products are expressly advertised as meal replacement *smoothies or shakes* and cannot be consumed as such without following the directions for use,

which clearly call for the addition of 8 ounces of fat free milk. Plaintiff further does not dispute that one serving of the Advanced Nutrition Product or Advanced Immunity Product when prepared as instructed does, in fact, provide 20g protein. Likewise, she does not dispute that one serving of the Original Product when prepared as instructed does, in fact, provide 10g protein. Plaintiff's theory of deception is simply "unreasonable in the context of the entire [container]." *Id.* at 290.

The Complaint does not include any well-pled factual allegations that *reasonable* consumers do not understand that asterisk-type symbols refer to additional information on the label. Plaintiff wants to act as if the multiple "disclaimers and qualifying language" can simply be ignored; under established law, they cannot. *Mantikas*, 910 F.3d at 636. The Product containers all repeatedly and expressly state that the "20g" and "10g" refer to per smoothie or shake prepared with fat free milk. There can be no section 349 or 350 claim "when the allegedly deceptive practice was fully disclosed[.]" *Broder*, 281 A.D.2d at 371.

Finally, Plaintiff's misguided riff on FDA regulations is inapposite. "[C]laims regarding FDA regulations are not relevant to determining whether a label is deceptive or misleading" to reasonable consumers. *Pichardo v. Only What You Need, Inc.*, No. 20-CV493 (VEC), 2020 WL 6323775, at *3 n.6 (S.D.N.Y. Oct. 27, 2020). "The point here is not conformity with this or that standard (which is left to authorities to regulate) but whether the marketing presentation was deceptive." *Steele v. Wegmans Food Markets, Inc.*, 472 F.Supp.3d 47, 50 (S.D.N.Y. 2020); *accord Dashnau v. Unilever Manufacturing (US), Inc.*, 529 F.Supp.3d at 243. Because Plaintiff

fails to allege well-pleaded facts plausibly establishing reasonable consumers would be misled, her GBL sections 349 and 350 claims fail as a matter of law.[1]

### C. Plaintiff's Breach of Express Warranty Claims Fails for the Same Reason as Her GBL Claims.

Having failed to plausibly allege "that the product labeling, taken as a whole, is deceptive[,]" Plaintiff's breach of express warranty claim fails for the same reasons as her GBL claims. *Boswell*, 570 F.Supp.3d at 96; *see also Dashnau*, 529 F.Supp.3d at 240-41 ("if the Court concludes as a matter of law that there is no material misrepresentation, none of Plaintiffs' claims can survive").

### D. Plaintiff States No Claim for Restitution.

In her Complaint, Plaintiff seeks "an order of restitution." (Doc. 1, p. 27.) However, GBL §§ 349 and 350 provide private plaintiffs with only a claim for damages, not restitution. *See* New York Gen. Bus. Law §§ 349(h) and 350-e(3). Under New York law, breach of express warranty also is a cause of action for damages. *See Lazaroff v. Paraco Gas Corp.*, 965 A.D.2d 1080, 1081, 945 N.Y.S.2d 326 (2012). Plaintiff does not allege facts establishing that she individually has any claim for which restitution is an available remedy. Accordingly, the Court should dismiss any claim restitution.

---

[1] With respect to her individual claims, Count II of the Complaint is simply redundant to Counts III and IV (the GBL claims). With respect to New York consumers like Plaintiff, the "Consumer Protection Statute" that Count II cites is "N.Y. Gen. Bus. Law § 349, et seq." (Doc. 1, at p. 22 n.3.) Thus, her claim in Count II fails for the same reasons as Counts III and IV.

## V.     CONCLUSION

For the foregoing reasons, Defendant requests that the Court grant its motion to dismiss in its entirety. As no amendment can change what the labels say, the dismissal should be with prejudice.


Date: September 27th 2022                    Respectfully submitted,


                                            */s/ William P. Cole*

                                            AMIN TALATI WASSERMAN, LLP
                                            William P. Cole (*pro hac vice*)
                                            Matthew R. Orr (*pro hac vice*)
                                            515 South Flower Street, 18th Floor
                                            Los Angeles, CA 90071
                                            Telephone: (213) 933-2330
                                            Facsimile: (312) 884-7352

                                            Attorneys for Defendant KSF Acquisition
                                            Corporation

## CERTIFICATE OF SERVICE

(United States District Court)

I am over the age of 18 and not a party to the within action; my business address is 515 South Flower St., 18th Floor, Los Angeles, CA 90071.

On September 27, 2022, I have served the foregoing documents described as **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** on the following person(s) in the manner(s) indicated below:

### SEE ATTACHED SERVICE LIST

[X]     (BY ELECTRONIC TRANSMISSION)   I served electronically from the electronic notification address of mariam@amintalati.com the document described above and a copy of this declaration to the person and at the electronic notification address set forth herein.

[X]     (BY MAIL)  I am familiar with the practice of Amin Talati Wasserman, LLP for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On this date, a copy of said document was placed in a sealed envelope, with postage fully prepaid, addressed as set forth herein, and such envelope was placed for collection and mailing at Amin Talati Wasserman, LLP, following ordinary business practices.

[  ]     (BY OVERNIGHT SERVICE)  I am familiar with the practice of Amin Talati Wasserman, LLP for collection and processing of correspondence for delivery by overnight courier. Correspondence so collected and processed is deposited in a box or other facility regularly maintained by the overnight service provider the same day in the ordinary course of business. On this date, a copy of said document was placed in a sealed envelope designated by the overnight service provider with delivery fees paid or provided for, addressed as set forth herein, and such envelope was placed for delivery by the overnight service provider at Amin Talati Wasserman, LLP, following ordinary business practices.

[  ]     (FEDERAL)  I declare that I am a member of the Bar and a registered Filing User for this District of the United States District Court.

[  ]     (FEDERAL) I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on September 27, 2022.


/s/ *Mariam A. Yusuf*
Mariam A. Yusuf

## SERVICE LIST

| | |
|---|---|
| Jason P. Sultzer, Esq.<br>Joseph Lipari, Esq.<br>Daniel Markowitz, Esq.<br>85 Civic Center Plaza, Suite 200<br>Poughkeepsie, NY 12601<br>Tel: (845) 483-7100<br>Fax: (888) 749-7747<br>sultzerj@thesultzerlawgroup.com<br>liparij@thesultzerlawgroup.com<br>markowitzd@thesultzerlawgroup.com | Plaintiff's Attorney |
| | |

16